J-S69017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO M.A.S.W., JR., A/K/A M.A.W., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.W., MOTHER | |
| | No. 617 MDA 2016 |

Appeal from the Decree entered March 15, 2016,
in the Court of Common Pleas of Berks County,
Orphans' Court, at No(s): 84435.

BEFORE: STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 06, 2016**

C.L.W. ("Mother") appeals from the Decree involuntarily terminating her parental rights to M.A.W., Jr., ("Child") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b). Concluding that her appeal is frivolous, Mother's counsel has filed an application to withdraw. We grant counsel's application to withdraw, and affirm the Decree terminating Mother's parental rights.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Mother has had a long history with Berks County Children and Youth Services ("the Agency"), beginning when she herself was a child. In March 2008, at the age of fourteen and while in foster care, Mother gave birth to

_____

[*] Retired Senior Judge Assigned to the Superior Court.

her first child, a son. Due to issues with Mother's inability and, at times refusal to parent, the child was removed from her care. On January 10, 2013, Mother executed an affidavit of consent to the child's adoption.

In November 2012, Mother gave birth to her second child, a daughter. Because Mother had not remediated ongoing concerns regarding her unstable housing, mental health, drug abuse, and lack of appropriate parenting skills, the child was promptly removed from Mother's care. Thereafter, Mother made minimal effort to engage in services and missed many appointments. Although at times Mother would state she would take certain steps towards her goals, she never followed through. Several evaluations conducted throughout Mother's involvement with the Agency all indicated that Mother (1) had a consistent pattern of seeking partners who were abusive or drug-involved; and (2) needed to engage in long-term mental health treatment. Mother's parental rights to her second child were involuntarily terminated on August 14, 2013.

While she was pregnant with Child, the subject of this appeal, Mother experienced physical and emotional abuse from M.A.W., Sr., ("Father"). In March 2015, Mother gave birth to Child. At the hospital, Mother and Father had a heated argument, which culminated in Father's spitting in Mother's face and hospital security becoming involved. As a result of this confrontation, Mother suffered a panic attack. Given her prior involvement with the Agency, there were immediate concerns regarding her ability to

parent and to keep Child safe. The Agency obtained immediate emergency custody of Child.

The Orphans' Court subsequently adjudicated Child dependent and awarded custody to the Agency for placement purposes. The court ordered the primary goal to be adoption with a concurrent goal of return to the most appropriate parent. The court ordered Mother to participate in services including parenting education, visitation, domestic violence evaluation and treatment, mental health treatment, casework services, and to establish and maintain stable and appropriate housing and income.[1] The court found that aggravated circumstances existed because Mother's parental rights to her second child had been involuntarily terminated.

At the first permanency review hearing on August 18, 2015, the court found that Mother had made no progress toward remediating the circumstances that had led to Child's placement. Mother and Father had been offered casework services on an as-requested basis. However, they often failed to attend sessions after they requested them, and argued with one another and the Agency's staff when they did attend. In individual counseling sessions, Mother expressed feelings of depression and agreed that Father was violent, physically and verbally abusive, controlling, and not

_____

[1] These same goals were established for Father. The Orphans' Court granted the Agency's subsequent petition to terminate his parental rights. Father did not appeal.

appropriate for her or Child. She nonetheless made excuses for him and otherwise justified his behavior.

On September 22, 2015, the Agency filed a petition to terminate the parental rights of Mother ("TPR petition") pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (5), and § 2511(b). Despite the receipt of notice of the TPR petition, Mother continued to comply only minimally with her goals. Mother was uncooperative and dishonest in her drug and alcohol evaluations. She failed to accept responsibility for Child's continuing placement and placed blame on others, including the Agency's staff.

On February 3, 2016, the Agency informed Mother that it would be requesting a hearing date on the TPR petition. Later that month, Mother confirmed the Agency's suspicions that she was pregnant with her second child with Father. On doctor's orders, Mother stopped taking medication prescribed to treat her mental health issues.

Despite domestic violence issues which prompted her to inform the Agency on several occasions that the she was leaving Father, she resided with him until February 19, 2016, and left him only after learning that he had been unfaithful. Mother began residing at a Berks Women in Crisis shelter, then obtained housing on March 1, 2016, through Berks Counseling Center's transitional housing program. Mother did not consistently begin to seek domestic violence treatment until January 2016, and, at the time of the TPR hearing, had yet to achieve any of her goals.

At the beginning of TPR Hearing on March 14, 2016, Mother's counsel informed the court that because Mother had "started to resolve a lot of her issues," she was "requesting the Court to consider giving a three-month delay in having the termination hearing in order to allow [Mother] to continue with all of her services." N.T., 3/14/16, at 23. The Orphans' Court deferred decision on Mother's request and heard evidence regarding the Agency's TPR petition. The Agency presented the testimony of an expert regarding domestic violence and mental health, and the adoption caseworker who had worked with Mother. Mother testified on her own behalf. At the conclusion of the hearing, the Orphans' Court denied Mother's request for a continuance and took the TPR petition under advisement. By Decree entered March 15, 2016, the court terminated Mother's parental rights.

Mother timely appealed.

**ISSUES ON APPEAL**

Mother raises the following issues on appeal:

1. Did the [Orphans'] Court err by terminating [Mother's] parental rights because [the Agency] did not establish by clear and convincing evidence that [Mother's] parental rights should be terminated pursuant to [the] Pennsylvania Adoption Act, 23 Pa.C.S.A. §2511(a)(1)?

2. Did the [Orphans'] Court err by terminating [Mother's] parental rights by failing to consider Mother's presentation of evidence that she had remedied conditions leading to [Child's] placement based on the grounds for involuntary termination set forth in 23 Pa.C.S.A. §2511(a)(2)?

3. Did the [Orphans'] Court err by terminating [Mother's] parental rights by abusing its discretion in failing to take

into consideration [Mother's] presenting evidence that she remedied the circumstances for which [Child] had been removed from her care and the strides she made post filing [of the TPR petition] on September 15, 2015 when [the Orphans'] Court had consolidated [the TPR hearing] with [the] Permanency Review Hearing?

Mother's Brief at 3.  We will address these claims together.

**COUNSEL'S APPLICATION TO WITHDRAW**

On June 28, 2016, 2013, Mother's counsel filed an application to withdraw as counsel and an ***Anders***[2] brief.  We begin by addressing the motion to withdraw before reaching the merits of the issues raised in the ***Anders*** brief.  ***See Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa. Super. 2005) (*quoting* ***Commonwealth v. Smith***, 700 A.2d 1301, 1303 (Pa. Super. 1997)) (stating, "[w]hen faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw").

In ***In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992), this Court extended the ***Anders*** principles to appeals involving the termination of parental rights.  We stated that counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw representation and must submit an ***Anders***

---

[2] ***See Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

brief. ***Id***. at 1275. To withdraw pursuant to ***Anders***, counsel must: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise the appellant of his or her right to obtain new counsel or to file a *pro se* brief to raise any additional points that the appellant deems worthy of review. ***In re V.E.***, 611 A.2d at 1273. Thereafter, this Court examines the record and determines whether the appeal is wholly frivolous. ***Id.***

Our Supreme Court, in ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), stated that an ***Anders*** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

The ***Santiago*** Court reaffirmed the principle that indigents "generally have a right to counsel on a first appeal, [but] . . . this right does not include

the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing such an appeal." ***Santiago***, 978 A.2d at 357 (citation omitted). Our Supreme Court stated:

> In the Court's view, this distinction gave meaning to the Court's long-standing emphasis on an indigent appellant's right to "advocacy." . . . As the Court put it, "[a]lthough an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments."

***Santiago***, 978 A.2d at 357-358 (citation omitted). Mother's counsel has complied with all of the requirements of ***Anders***/***Santiago***. We thus proceed to consider her assessment of Mother's claims.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." ***Id.*** We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, merely because the record would support a different result. ***Id.*** at 826-827.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71

A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See, e.g., In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

   a)   The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

      (1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of

- 9 -

the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

- 10 -

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that the Agency met the requirements of Section 2511(a)(1). The Orphans' Court found that, in the relevant period prior to the Agency's filing of the TPR Petition on September 22, 2015, Child had remained in placement, and Mother had failed to meet her established goals. While recognizing Mother had recently taken positive steps toward achieving an ability to parent, the court concluded that Child's need for permanency should not await Mother's attempt to reach her goals in the future:

> Mother [has] failed to perform [her] parental duties for a full year and [has] not remedied the conditions that led to Child's placement. . . . Until recently, Mother failed to extricate herself from the abusive relationship with Father. She put her needs above Child's. She has yet to successfully complete domestic violence and mental health treatment, parenting education, and casework services. She has failed to obtain and maintain stable housing and income. She has only recently entered transitional

- 11 -

housing and has stated no plan for what she is transitioning to. Mother's recent, short period of "independent" living has not been long enough to demonstrate that she is, or will remain, free of her cycle of abusive relationships. Mother remains at a high risk of returning to Father or another abusive relationship. Independent living will be difficult for her, especially since she has only part-time employment that does not provide an income sufficient to support herself, let alone Child too.

Mother asked that she be given three months to show she is ready to have Child returned to her. The [Agency's] testimony reflected that Mother would need a minimum of six months to demonstrate that has remedied the conditions that led to Child's placement. Mother expects that her parental rights should for some reason be preserved until a time that is more suitable for her; however, she has already had a full year to comply with services and show she can keep herself and Child safe and has not done so. Allowing Mother another three to six months, or more, to remedy the conditions that led to Child's placement is not reasonable under the circumstances and would not best serve the needs and welfare of Child.

Orphans' Court Opinion, dated 5/25/16, at 8-9.

Mother argues that the termination of her parental rights is not supported by the evidence of record, because the Agency failed to meet its burden under Section 2511(a)(1). According to Mother, the evidence presented during the TPR Hearing "failed to establish that [she] showed a settled purpose, refused or failed to perform parental duties." Mother's Brief at 20. Moreover, she asserts that her testimony demonstrates that "she has shown effort and consistency in making progress with services required by the [Orphans' Court] and [the Agency] to remediate issues for which [Child] came into care." *Id.* at 17.

Our review of the record refutes Mother's claims. It was for the Orphans' Court, as a matter of credibility, to accord the weight to be given Mother's testimony. **In re M.G.**, **supra**. Moreover, even if Mother is now truly making strides toward her ability to parent, she presented no evidence as to why she had made no progress toward her goals prior to that time. Finally, we note that the Orphans' Court was not to consider Mother's efforts made after the TPR petition was filed when considering termination under 23 Pa.C.S. section 2511(a)(1). **See** 23 Pa.C.S. § 2511(b) (providing that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the [TPR Petition]."

Accordingly, the court did not abuse its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and we need not consider the other bases for termination under this section. **See B.L.W.**, **supra**.

### Termination Pursuant to Section 2511(b)

While Mother does not expressly challenge the termination of her parental rights pursuant to 23 Pa.C.S. § 2511(b), we also agree with the Orphans' Court's determination that the Agency met its burden under that subsection, and that terminating Mother's parental rights is in the best interest of the Child. The court explained:

- 13 -

Child has been receiving his essential parental care, control, protection, and subsistence from a foster family for his whole life, and he is bonded with this family. Severing any bond that Child might have with [Mother] in favor of giving him a permanent, healthy, and safe home where his developmental, physical, and emotional needs will be met clearly is in his best interest.

Orphans' Court Opinion, 5/25/16, at 8-9.

**CONCLUSION**

In sum, our review of the record supports the conclusion by Mother's counsel that the claims Mother wished to raise on appeal are frivolous. We agree with the Orphans' Court's conclusion that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we grant Mother's counsel's application to withdraw and affirm.

Application to Withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/6/2016

- 14 -